**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

L. C., individually and as the parent and guardian of
E. C., a minor child,

                Plaintiff,

v.                                        CIVIL ACTION NO. 3:25-0587

CABELL COUNTY BOARD OF EDUCATION,
EMILY BARKER, and
JOHN AND JANE DOES 1-2,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Cabell County Board of Education's Motion to Dismiss ("CCBOE Mot."), ECF No. 13; Defendant Emily Barker's Partial Motion to Dismiss ("Barker Mot."), ECF No. 18; and Plaintiff L.C. individually and as parent and guardian of E.C.'s Motion to Strike Insufficiently Pled Defenses ("Pl.'s Mot. to Strike"), ECF No. 21. Each motion is opposed.

For the following reasons, the Court **GRANTS**, in part, and **DENIES**, in part, the motions.[1]

**I. BACKGROUND**

E.C. is a six-year-old with autism spectrum disorder. *Compl.* ¶ 14, ECF No. 1. According to the Complaint, E.C. was enrolled at Explorer Academy, a school within the system of Cabell

---

[1] The Court also considered Defendant CCBOE's Memorandum of Law in Support of its Motion to Dismiss ("CCBOE Mem."), ECF No. 14; Plaintiff's Response in Opposition to Defendant CCBOE's Motion to Dismiss ("Pl.'s CCBOE Resp."), ECF No. 17; Defendant CCBOE's Reply in Support of its Motion to Dismiss ("CCBOE Reply"), ECF No. 22; Defendant Emily Barker's Memorandum of Law in Support of her Partial Motion to Dismiss ("Barker Mem."), ECF No. 19; Plaintiff's Response in Opposition to Defendant Emily Barker's Partial Motion to Dismiss ("Pl.'s Barker Resp."), ECF No. 23; Defendant Emily Barker's Reply in Support of her Partial Motion to Dismiss ("Barker Reply"), ECF No. 27; Defendant's Response in Opposition to Plaintiff's Motion to Strike ("Defs.' Resp. to Mot. to Strike"), ECF No. 24.

County Board of Education (CCBOE), for the 2023-24 school year. *Id.* ¶¶ 3–4, 15. Plaintiff L.C., E. C.'s parent and guardian, alleges that, on a school day in October of 2023, teacher and CCBOE's employee Defendant Barker "physically attacked E.C. by forcing her into a seat in a rough manner, causing E.C. to exclaim '[o]w, my finger,'" and "pulled E.C. from a tent in the classroom by her leg." *Id.* ¶¶ 5, 20–21. Plaintiff states that, while CCBOE operates a "self-contained classroom" for children with special needs at Explorer Academy, "Defendant CCBOE did not adequately properly hire, retain, or supervise its employes working with special needs children." *Id.* ¶¶ 4, 16–17. Plaintiff alleges that Ryan McKenzie,[2] the school principal, had a nurse evaluate E.C. and instructed the nurse to make a report, however, no reports were made. *Id.* ¶¶ 7, 22, 30. Further, Plaintiff alleges that despite L.C. messaging Defendant Barker on the day of the incident inquiring as to E.C.'s day at school, L.C. was not informed of the incident until forty-eight hours later. *Id.* ¶¶ 23-24. Plaintiff alleges Defendants improperly restricted her from accessing portions of classroom video. *Id.* ¶¶ 25-29.

Plaintiff filed this Complaint in October of 2025, asserting ten causes of action: Count I – Negligence; Count II – Negligent Hiring, Supervision, Retention; Count III – Violation of the West Virginia Human Rights Act (WVHRA); Count IV – Disability Discrimination in Violation of the Americans with Disabilities Act (ADA); Count V – Civil Battery; Count VI – Civil Assault; Count VII – Tort of Outrage; Count VIII – Negligent Infliction of Emotional Distress (NIED); Count IX – Loss of Filial Consortium; and Count X – Violation of 42 U.S.C. § 1983. *Compl.* ¶¶ 38–125. In addition to Defendants Barker and CCBOE, Defendants include John and Jane Does 1-2, "teachers, administrators, and agents and/or employees of Defendant CCBOE." *Id.* ¶ 9.

---

[2] Within the Complaint, the last name is spelled "McKenize" and "McKenzie." He was terminated from the action on December 10, 2025, pursuant to Fed. R. Civ. P. 41(a)(1)(A). *See* ECF No. 4.

Defendants argue claims against them should be dismissed pursuant to Rule 12(b)(6). *CCBOE Mot.* 1; *Barker Mot.* 1. Defendant CCBOE moves to dismiss Counts I, II, III, IV, VII–X. *CCBOE Mot.* 1.[3] Defendant CCBOE also moves to dismiss punitive damages asserted against it. *CCBOE Mem.* 18. Defendant Barker moves to dismiss some of the claims asserted against her – Counts I, III, IV, and VII–IX. *Barker Mot.* 1. Plaintiff requests that the Court strike "insufficiently pled" defenses asserted by Defendants Barker and CCBOE. *Pl.'s Mot. to Strike* 1.

## II. STANDARD OF LAW

To survive a 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accepting the factual allegations in the complaint as true, the allegations "must be enough to raise a right to relief above the speculative level . . .." *Id.* at 555 (citations omitted). While the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted).

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. Additionally, while factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* Whether a plausible claim is

---

[3] Defendant CCBOE moves to dismiss all the claims asserted against it. *CCBOE Mem.* 2.

stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.

Federal Rule of Civil Procedure 12(f) provides, in part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party . . . within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). The standard for a motion to strike will be expanded upon below, when the motion is addressed.

## III. DISCUSSION

### A. Motions to Dismiss

Both Defendant CCBOE and Defendant Barker move to dismiss six of Plaintiff's ten asserted counts: Counts I (Negligence), III (WVHRA), IV (ADA), VII (Tort of Outrage), VIII (NIED), and IX (Loss of Filial Consortium). *CCBOE Mot.* 1; *Barker Mot.* 1. Defendant CCBOE moves to dismiss an additional two counts of Plaintiff's Complaint which were asserted only against Defendant CCBOE: Count II (Negligent Hiring, Supervision, Retention) and Count X (§ 1983). *CCBOE Mot.* 1; *Barker Mot.* 1.

The Court considers each challenged count in turn, followed by the analysis of Defendant Barker's request for dismissal of official capacity claims and Defendant CCBOE's request for dismissal of punitive damages.

### 1. Negligence

In Count I, Plaintiff alleges a claim of negligence against all Defendants. The allegations include a general claim of negligence and negligence based upon violations of state law. To survive a motion to dismiss, Plaintiff must plead duty, breach, causation, and damages. *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022). Defendants move to dismiss, asserting

-4-

that the claims are insufficiently pled and that immunity bars liability. *Barker Mem*. 6; *CCBOE Mem*. 5–7.

### i.　General Negligence

*First*, Plaintiff alleges Defendants "by serving in *loco parentis* . . . hold heightened responsibilities to its students – including students with special needs like E.C. – including a heightened fiduciary duty." *Compl*. ¶ 40. Plaintiff states Defendants owe a duty to protect and ensure the safety of those entrusted to their care. *Id.* ¶¶ 41–42. *Second*, Plaintiff alleges Defendants breached their duty by failing to place E.C. in a safe classroom. *Id.* ¶¶ 43, 47. *Third*, the Complaint alleges Plaintiff and E.C. suffered physical and emotional harm because of Defendants' negligence. *Id.* ¶ 48.

Defendants argue Plaintiff failed to plead sufficient facts to state a claim for negligence because Plaintiff only argues that the classroom was "unsafe" because of intentional conduct of Defendant Barker. *Barker Mem*. 6; *CCBOE Mem*. 6–7. Specifically, Defendants argue that the alleged acts of Defendant Barker on October 4, 2023 – forcing E.C. into a chair and pulling E.C. from a tent – only support a claim of an intentional tort, not negligence. *Barker Mem*. 6; *CCBOE Mem*. 6–7. Defendant CCBOE further argues that the inadequately pled negligence claim was an attempt to avoid the immunity that the West Virginia Governmental Tort Claims and Insurance Reform Act ("TCA"), West Virginia Code § 29-12A-4, provides to Defendant CCBOE for an employee's intentional tort. *CCBOE Mem*. 7.

In addressing the sufficiency of the negligence claim against Defendant Barker, Plaintiff argues that Federal Rule of Civil Procedure 8 permits pleading in the alternative and that jurors may "choose to believe that Barker's actions were negligent, rather than an intentional tort." *Pl.'s Barker Resp*. 6–7; *Pl.'s CCBOE Resp*. 6. Plaintiff cites this Court's decision in *O.W. v. Cabell*

*County Board of Education*, No. 3:23-0070, 2024 WL 3445489, at *4 (S.D. W. Va. July 17, 2024), where a negligence claim survived against the same defendant, CCBOE, and its employees. As Defendants note, the pleadings in *O.W.* included allegations of a failure to maintain a safe classroom, as alleged here, but there were additional allegations that the defendants failed to supervise a child. *O.W.*, 2024 WL 3445489, at *3. Here, the primary allegations include Defendant Barker's "attack" of E.C., which does suggest intentional conduct, but there are also incorporated allegations that "E.C. was the subject of maltreatment on additional days for which no video was preserved or maintained." *Compl.* ¶¶ 5, 20–21, 34, 38. The Court finds it is premature to dismiss Count I against Defendant Barker while acknowledging that allegations of negligence alone "cannot turn an intentional tort into negligent conduct." *See CCBOE Reply* 3 (citing *Ammirante v. Ohio Cnty. Bd. of Educ.*, No. 5:19CV12, 2019 WL 5295188, at *6 (N.D. W. Va. 2019) (citation omitted)). Although the pleadings are minimal, they sufficiently state a negligence claim at this stage. Thus, the Court rejects Defendant CCBOE's argument that Count I should be dismissed because Defendant CCBOE's failure to provide a safe classroom relies upon Defendant Barker's intentional conduct. The Court proceeds by evaluating Defendant CCBOE's alternative arguments.

Defendant CCBOE incorrectly states that "[d]espite its absence in Plaintiff's Complaint, her Response now argues vicarious liability/respondeat superior." *CCBOE Reply* 3. An independent basis for CCBOE's negligence and negligence through the acts of employees were both alleged. *See Compl.* ¶¶ 40–53. And, despite Defendant CCBOE's argument that Plaintiff has argued herself out of immunity exceptions, *CCBOE Reply* 3, the Court finds pleading in the alternative is acceptable at this point.

Plaintiff also argues that Defendants fail to acknowledge pleadings of independent negligent acts, including "that Defendant failed to provide statutorily required training and

monitoring of E.C.'s classroom to ensure her safety." *Pl.'s CCBOE Resp.* 9. Defendant CCBOE responds that such pleading is clearly a theory of negligent training and/or supervision and should be considered under Count II (negligent hiring, supervision, retention). *CCBOE Reply* 4 n.2. While the pleadings do overlap, as is addressed below, Plaintiff may use the alleged statutory violation in support of the general negligence claim against Defendant CCBOE but not as an independent cause of action.

### ii.    *Negligence Per Se*

Plaintiff alleges that Defendants violated West Virginia Code § 49-2-803(a), requiring school personnel to report abuse and neglect, and West Virginia Code § 18-5-15c, requiring county boards of education to train their employees in the prevention of child abuse and neglect. *Compl.* ¶¶ 44–47. Plaintiff argues that such violations establish negligence per se and are also prima facie evidence of negligence, establishing duty and breach. *Id.* (citing Syl. Pt. 1, *Anderson v. Moulder*, 394 S.E.2d 61, 67 (W. Va. 1990)).

Defendant CCBOE argues that any negligence per se claim based on a statutory violation must be dismissed because West Virginia solely considers statutory violations to be prima facie evidence of negligence. *CCBOE Mem.* 8. The Court agrees. West Virginia law does not provide a cause of action for negligence per se. *See Mills v. Cabell Cnty. Bd. of Educ.*, No. 3:22-0592, 2023 WL 4980553, at *3 (S.D. W. Va. 2023). Plaintiff acknowledges that statutory violations are prima facie evidence, not an independent cause of action. *Pl.'s CCBOE Resp.* 9–10 (citing *Waugh v. Traxler*, 412 S.E.2d 756, 758–59 (W. Va. 1991)); *Compl.* ¶¶ 46–47.[4] Thus, Plaintiff abandons the

---

[4] Defendant CCBOE inaccurately argues Plaintiff failed to allege that Defendant CCBOE's failure to report was a proximate cause to Plaintiff's injuries. *CCBOE Mem.* 8; *Compl.* ¶¶ 88–90. An evaluation of proximate cause would be premature at this point. Defendant also argues that the statutory violations alleged do not provide a private cause of action, *CCBOE Mem.* 9, however, the Court will forego an analysis based on the dismissal of any per se claim of negligence.

initial claim of negligence per se.

Accordingly, the Court **GRANTS** Defendant CCBOE's Motion to Dismiss Count I only to the extent that it pleads a negligence per se claim. In proving Plaintiff's claim for negligence, Plaintiff is welcome to argue that violations of West Virginia Code §§ 49-2-803(a) and 18-5-15c provide prima facie evidence of negligence.

### iii.    Immunity

Defendant Barker cites the TCA, West Virginia Code § 29-12A, *Barker Mem*. 4, which provides the following:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.
> (c) The immunity conferred upon an employee by subsection (b) of this section does not affect or limit any liability of a political subdivision for an act or omission of the employee.

West Virginia Code § 29-12A-5(b), (c). Plaintiff's pleadings, taken as true for purposes of this motion, plausibly allege Defendant Barker acted "in a wanton or reckless manner" or "manifestly outside the scope of employment." If proven, Defendant Barker would not be immune.

Defendant CCBOE argues that, as the negligence claim is insufficiently pled, it is immune from the independent and intentional acts of Defendant Barker pursuant to Section 29-12A-4 of the TCA. *CCBOE Mem*. 5–6. The TCA provides that political subdivisions are generally "not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function . . .." W. Va. Code § 29–12A–4(b)(1). However, there are delineated circumstances where political subdivisions are liable, including

-8-

when "injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment" and when "liability is expressly imposed upon the political subdivision by a provision of this code." W. Va. Code § 29–12A–4 (c)(2), (c)(5). Section 29–12A–4(c)(2) does not expressly create liability for intentional acts, however, it does create liability for negligent acts of employees within the scope of their employment. As previously determined, the negligence claim against Defendant Barker survives. Pleadings include conduct by Defendant Barker that could be considered within and outside the scope of employment. Thus, it is premature to determine whether immunity bars suit against either defendant.

Accordingly, Defendant Barker's Partial Motion to Dismiss Count I is **DENIED**. Defendant CCBOE's Motion to Dismiss Count I's general negligence claim is **DENIED**.

### 2. Negligent Hiring, Supervision, Retention

Defendant CCBOE moves to dismiss Count II, Plaintiff's asserted claim of negligent hiring, supervision, and retention. *CCBOE Mem.* 9; *Compl.* ¶¶ 56–68.

In evaluating a negligent hiring or retention claim, the Court generally evaluates if:

When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*State ex rel. W. Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997); *McCormick v. W. Virginia Dept. of Pub. Safety*, 503 S.E.2d 502, 506 n.5 (W. Va. 1998) (per curiam). The Court must also consider "the nature of the employee's job assignment, duties and responsibilities." *McCormick*, 503 S.E.2d at 507. The duty with respect to hiring and retention increases "as the risks to third persons associated with a particular job increase." *Id.* The Supreme Court of Appeals

-9-

of West Virginia in *C.C. v. Harrison County Board of Education*, 859 S.E.2d 762 (W. Va. 2021), stated that each component of a negligent hiring, retention, and supervision claim has its own elements. 859 S.E.2d at 722. However, the elements were not stated explicitly.

Defendant CCBOE argues that Plaintiff fails to state a claim for negligent hiring because Plaintiff does not allege prior misconduct that would put Defendant CCBOE on notice of any risk of harm. *CCBOE Mem.* 11 (*citing C.C.*, 859 S.E.2d 762[5]). The Complaint does not indicate how Defendant CCBOE failed to conduct a reasonable investigation into Defendant Barker prior to hiring, nor does it allege Defendant Barker's background would reveal any reason to believe she would pose a risk of harm. Thus, the negligent hiring claim will be dismissed.

For a negligent retention claim, liability may be imposed "when an injury occurred as a result of an employer's retention of an 'unfit employee' and such risk of injury was reasonably foreseeable to the employer." *C.C.*, 859 S.E.2d at 776 (citation omitted). There are no allegations to support negligence surrounding a decision to retain Defendant Barker. Thus, the Court will dismiss Plaintiff's claims of negligent retention.

To plead a negligent supervision claim, Plaintiff must allege that Defendant CCBOE failed to properly supervise employees and, as a result, the employee proximately caused injury. *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000). "A claim for negligent supervision in West Virginia requires proof of the traditional elements of negligence – duty, breach, causation, and damages – supplemented by the additional necessity of demonstrating a tortious act or omission by the employee whose conduct forms the basis of the claim." Syl. Pt. 2, *Camden-Clark Mem'l Hosp. Corp. v. Marietta Area Healthcare, Inc.*, 922 S.E.2d 324 (W. Va.

---

[5] Defendant CCBOE's citation is erroneous, incomplete, and the quoted text is not found within the decision.

2025).[6] Plaintiff alleges, in part, that Defendant CCBOE failed to review footage of the classroom and knew or should have known that employees were acting negligently, asserting that there were other incidents of mistreatment of E.C. that were not preserved by video. *Pl.'s CCBOE Resp.* 11–12. The Complaint further states that, in result of such failure of the duty to supervise, other defendants were permitted to and did commit negligent acts towards E.C. which caused damages. *Compl.* ¶ 66. Thus, the negligent supervision claim is sufficiently pled.

Defendant CCBOE argues that it is immune from liability for discretionary governmental functions, including the alleged negligent hiring, supervision, or retention of employees. *CCBOE Mem.* 10 (citing *W. Va. Dep't of Human Servs. v. A.R.*, 900 S.E.2d 16, 23 (W. Va. 2024)). The immunity does not apply if the actions violated a clearly established statutory or constitutional right of which a reasonable person would have known or which are fraudulent, malicious, or oppressive. Syl. Pt. 7, *A.R.*, 900 S.E.2d 16.

In response, Plaintiff argues that *A.R.* is distinguishable because the reasoning for that court's dismissal of the same claim included that Plaintiff failed to name a specific individual that the department failed to supervise after an unnamed employee was dismissed from the action. *Pl.'s CCBOE Resp.* 11. However, just as in *A.R.*, the duties that were negligently performed were clearly the shortcoming of some employee, whether stated or not, and the analysis is one of vicarious liability. *A.R.*, 766 S.E.2d at 772. Alternatively, Plaintiff unpersuasively argues that recklessness was asserted within the IIED claim which overcomes any immunity argued by Defendant CCBOE. *Pl.'s CCBOE Resp.* 11 (citing *Compl.* ¶ 106). While the pleadings within Count II incorporate

---

[6] In this decision, the Supreme Court of Appeals of West Virginia clarified that "[i]f an employer has a duty to supervise an employee, and the employer negligently fails in that duty, then the employer may be liable for the ensuing damage regardless of whether the employee's tortious conduct is negligent, reckless, or intentional." Syl. Pt. 3, *Camden-Clark Mem'l Hosp. Corp.*, 922 S.E.2d 324.

earlier pleadings by reference, *Compl.* ¶ 56, recklessness alleged within Count VII (IIED) followed the pleadings within Count II. Regardless, Plaintiff did not allege fraudulent, malicious, or oppressive conduct relating to this claim against Defendant CCBOE.

More persuasive is Plaintiff's argument that violations of statutory duties were pled, including Defendant CCBOE's duty to train and supervise employees, review footage, and report suspected abuse. *Pl.'s CCBOE Resp.* 8–9 (*citing Compl.* ¶¶ 46–47, 65; W. Va. Code § 18-20-11(j)). Plaintiff claims Defendant CCBOE "had a duty to properly train its employees on how child abuse and neglect could be prevented." *Compl.* ¶ 57 (*citing* W. Va. Code § 18-5-15c). Under § 18-5-15c, the "[c]ounty boards of education shall, to the extent funds are provided, establish programs for the prevention of child abuse and neglect and child assault." W. Va. Code § 18-5-15c(b). Defendant did not address this argument. The Court does not find immunity bars Plaintiff's negligent supervision claim at this point.

Accordingly, Defendant CCBOE's Motion to Dismiss Count II's negligent hiring and retention claim is **GRANTED**. Defendant CCBOE's Motion to Dismiss Count II's negligent supervision claim is **DENIED**.

### 3. West Virginia Human Rights Act

In Count III, Plaintiff asserts a claim under the West Virginia Human Rights Act (WVHRA) against all Defendants. *Compl.* ¶¶ 69–81. The WVHRA makes it unlawful for "any person being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodations to . . . [r]efuse, withhold from, or deny to any individual because of his or her . . . disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges, or services of the place of public accommodations." W. Va. Code § 16B-17-9(6)(A).

Defendant Barker asserts that Plaintiff fails to allege a disability under the WVHRA, that E.C. has been deprived of an educational benefit, and both Defendants argue that the requisite discriminatory motivation is lacking. *CCBOE Mem*. 12–13; *Barker Mem.* 8. The Court will first briefly address the two unconvincing arguments.

First, in addressing deprivation of a benefit, Plaintiff alleges that Defendants' conduct resulted in E.C.'s departure from public school which resulted in the deprivation of the ability to enjoy a public education. *Compl.* ¶ 80. Second, in addressing the existence of a disability, the Complaint generally states that E.C., a "six-year-old child with autism spectrum disorder," is an individual with a disability under the WVHRA. *Compl*. ¶¶ 14, 73. A "disability" includes a "mental or physical impairment which substantially limits one or more of such person's major life activities." W. Va. Code § 16B-17-3(m)(1). "Major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working[.]" *Id.* Plaintiff's earlier pleadings, incorporated by reference, state that E.C. has an individualized education plan; receives support provided by an advocate; and is taught in the school's special needs classroom or "self-contained classroom." *Pl.'s CCBOE Resp*. 13 (citing *Compl*. ¶¶ 16-19). Plaintiff sufficiently pled that E.C. has a disability under the WVHRA.

Finally, Defendants argue Plaintiff fails to allege that Defendants mistreated E.C. because of a disability. *CCBOE Mem*. 12–13; *Barker Mem.* 7–8. Plaintiff alleges Defendants failed to "properly accommodate E.C.'s disability by providing the services that she required to adequately pursue a public education as outlined herein" and that "[b]ut for her disability, E.C. would not have been denied the advantages and privileges of CCBOE's place of public accommodation." *Compl*. ¶¶ 74–75. Further, Plaintiff contends "Defendant CCBOE tolerated, permitted, and/or ratified the unlawful and discriminatory actions of the Individual Defendants." *Id*. ¶ 77. Unlike the

circumstance in *O.W.*, where a WVHRA claim was sufficiently pled, Plaintiff fails to articulate any facts within Count III, or prior facts through incorporation, to plead discriminatory motivation existed behind Defendants' actions.

Thus, Defendants' motions to dismiss Count III are **GRANTED**.

### 4. Americans with Disabilities Act

Defendants move to dismiss Count IV, Plaintiff's asserted claim alleging a violation of the Americans with Disability Act (ADA), arguing Plaintiff fails to allege that violative conduct occurred due to or because of E.C.'s disability. *Barker Mem*. 9; *CCBOE Mem*. 14. Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To assert a claim under the ADA, Plaintiff must allege that E.C. (1) has a disability; (2) is otherwise qualified for the benefit in question; and (3) was denied the benefit "solely by reason of" and motivated by the disability. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (citation omitted).

Consistent with Defendants' argument for dismissal of the WVHRA claim, Defendants only argue that Plaintiff has failed to allege facts that discrimination occurred "by reason of" E.C.'s disability. *CCBOE Mem*. 15; *Barker Mem*. 9. Again, Plaintiff states that this argument fails because the Complaint specifies that "but for" E.C.'s disability, she would not have suffered deprivation of a benefit. *Pl.'s CCBOE Resp*. 14; *Pl.'s CCBOE Resp*. 9. Here, however, although neither party acknowledges it in the briefings, in the Complaint, Plaintiff asserts that "Defendants knew, because of her disability, E.C. was not likely to effectively communicate with her parents about the neglect and mistreatment she suffered." *Compl.* ¶ 90. With this allegation, along with the pleadings that E.C. has a disability; that Defendants failed to adhere to E.C.'s IEP; and that but for her disability

-14-

she would not have been subjected to neglect, Plaintiff has sufficiently alleged discriminatory motivation. *Pl.'s Barker Resp.* 9. At this stage, the Court finds unpersuasive Defendant CCBOE's argument that Plaintiff fails to allege that non-disabled children were not harmed or denied access to resources. *CCBOE Reply* 6. Thus, Defendants' motions to dismiss Count IV are **DENIED**.[7]

### 5. Tort of Outrage

Count VII asserts a claim for the tort of outrage against all Defendants. *Compl.* ¶¶ 104–08. Defendants move to dismiss the claim, arguing Plaintiff failed to plead the requisite element of outrageous conduct, that the claim is duplicative, and that Defendant CCBOE is immune from liability. *CCBOE Mem.* 15–16; *Barker Mem.* 10–11.

The Supreme Court of Appeals of West Virginia first recognized a claim for intentional infliction of emotional distress (IIED), also known as the tort of outrage, in *Harless v. First National Bank*, 289 S.E.2d 692 (W. Va. 1982), when it said: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. Pt. 6, *Harless,* 289 S.E.2d 692. A plaintiff must establish the following four elements to prevail on a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab., Inc.*, 504 S.E.2d 419 (W. Va. 1998). The Supreme Court of Appeals

---

[7] Immunity does not apply to this ADA claim. *See* W. Va. Code § 29-12A-18(e) ("This article does not apply to, and shall not be construed to apply to, the following: . . . "[c]ivil claims based upon alleged violations of the Constitution or statutes of the United States").

of West Virginia stated the "law does not permit a double satisfaction for a single injury . . . because [the plaintiff] has two legal theories[.]" Syl. Pt. 7, *Harless*, 289 S.E.2d 692. Further, "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for the tort of outrageous conduct is duplicitous of a claim for assault and battery where both claims arise from the same event." Syl. Pt. 4, *Criss v. Criss*, 356 S.E.2d 620, 620 (W. Va. 1987). At the motion to dismiss stage, this Court and others within this District have consistently dismissed IIED claims based solely on the same conduct underlying asserted assault and battery claims for which a plaintiff may also recover damages for emotional distress. *See e.g., Searls v. W. Va. Reg'l Jail*, No. 3:15-cv-9133, 2016 WL 4698547, at *4 (S.D. W. Va. Sept. 7, 2016); *Pearson v. Thompson*, No. 2:19-cv-00321, 2019 WL 4145613, at *2 (S.D. W. Va. Aug. 29, 2019) (Johnston, J.); *Northcraft v. W. Va. Div. of Corr. & Rehab.*, No. 2:20-cv-00100, 2020 WL 6384419, at *4 (S.D. W. Va. Oct. 30, 2020) (Berger, J.). However, when conduct that is independent of the assault and battery claim is alleged as the basis of the IIED claim, it is not duplicative. *Northcraft*, 2020 WL 6384419, at *4.

Plaintiff makes three arguments in response to both motions. First, Plaintiff argues the motions to dismiss the IIED claim for being duplicitous "assumes that the Court will or will not act with regard to a separate motion to dismiss." *Pl.'s CCBOE Resp.* 14; *Pl.'s Barker Resp.* 10. Not so. Defendant Barker has not moved to dismiss the claims of assault or battery. Second, Plaintiff argues each defendant "incorrectly assumes that the damages E.C. suffered as a result of assault and battery at the hands of one defendant are duplicative of outrageous conduct perpetrated by distinct defendants and the emotional distress both E.C. and L.C. suffered." *Pl.'s CCBOE Resp.* 14; *Pl.'s Barker Resp.* 10. The Court agrees, in part, as will be further discussed below. Third, Plaintiff argues duplicative pleadings are permitted at this point in litigation. *Pl.'s CCBOE Resp.*

14; *Pl.'s Barker Resp.* 10. The Court disagrees in this context, however, part of the pleading is not duplicative, as is further discussed below. The Court proceeds by evaluating the IIED claim against each defendant.

### i. Defendant Barker

Plaintiff argues the factual support for the IIED claim against Defendant Barker stems from her "forcing a child into a seat, causing her to exclaim, 'ow, my finger' and pulling her from a tent by her leg." *Pl.'s Barker Resp.* 10. As this is the same conduct underlying the assault and battery claims, the Court agrees that the IIED claim based on this specific conduct is duplicative.

However, Plaintiff also asserts that Defendant Barker fails to consider the allegations in the Complaint of "additional and ongoing abuse on days for which no footage was preserved, and which assert that Plaintiff was told that the conduct was sufficient to file a report to Child Protective Services." *Id.* at 10–11 (citing *Compl.* ¶¶ 30, 34). The Complaint states the following:

> 23. On the date of the attack, L.C. messaged Defendant Baker to ask about E.C.'s day at school and was not advised about the incident or a trip to the nurse.
> 24. Forty-eight hours later, on October 6, 2023, L.C. was first notified of the attack on her child by the CCBOE. 30. Despite being told by CCBOE that two separate reports were made to Child Protective Services, L.C. was later informed that no such report was made.
> . . .
> 30. Despite being told by CCBOE that two separate reports were made to Child Protective Services, L.C. was later informed that no such report was made.
> 31. E.C. and L.C. have both suffered severe emotional distress as a result of the attack the CCBOE's conduct in permitting and concealing the attack.
> . . .
> 34. Upon information and belief, E.C. was the subject of maltreatment on additional days for which no video was preserved or maintained.

*Compl.* ¶¶ 23, 24, 30, 31, 34. At this stage, Plaintiff states a claim for IIED with allegations, including that Defendant Barker repeatedly mistreated E.C., with incidents on two occasions which were severe enough to warrant formal reports which were not made. The alleged conduct is separate from the conduct which forms Plaintiff's assault and battery claims.

Thus, Defendant Barker's Partial Motion to Dismiss Count VII is **GRANTED** only to the extent that it relies on conduct underlying the assault and battery claims; however, Count VII remains to the extent Plaintiff specifies independent conduct.[8]

### ii.    Defendant CCBOE

Defendant CCBOE argues the IIED claim asserted against it should be dismissed, as it is immune from liability for the claim under the TCA. *CCBOE Mem*. 4-5, 15–16 (citing *Tofi v. Napier*, No. 2:10-CV-01121, 2011 WL 3862118, at *3 (S.D. W. Va. Aug. 31, 2011)). As previously addressed, the TCA provides that political subdivisions generally are not liable unless a specific provision assigns liability or harm occurred due to negligence of its employees acting within the scope of employment.  W. Va. Code § 29–12A–4(b)(1), (c)(2), (c)(5). The subsection does not expressly create liability for intentional acts. Thus, Defendant CCBOE is correct, and Plaintiff fails to argue otherwise. In response, Plaintiff states that "Defendant does not separately address these claims within its immunity argument but consolidates such arguments under its 12(b)(6) arguments. Plaintiff responds in kind." *Pl.'s CCBOE Resp.* 7. Plaintiff never addresses the argument within the IIED section. Instead, Plaintiff states that Defendant CCBOE "incorrectly assumes that damages E.C. suffered as a result of assault and battery of one defendant are duplicative of outrageous conduct perpetrated by distinct defendants[.]" *Id.* at 14. However, Plaintiff never states what Defendant CCBOE's allegedly outrageous conduct was. Regardless, CCBOE is immune from liability for IIED under the TCA. *See Doe v. Cabell Cnty. Bd. of Educ.*, Civ. A. No. 3:21-0031, 2022 WL 568342, at *4 n.4 (S.D. W. Va. Feb. 24, 2022); *see also Tofi*, 2011 WL 3862118, at *3.

---

[8] Defendant Barker is not immune from this claim pursuant to W. Va. Code § 29–12A–5. *See supra* Part III.A.1.iii.

-18-

Thus, Defendant CCBOE's Motion to Dismiss Count VII is **GRANTED**.

### 6. Negligent Infliction of Emotional Distress

Count VIII asserts a claim of negligent infliction of emotional distress (NIED) against all Defendants. *Compl*. ¶¶ 109-11. Defendant CCBOE and Defendant Barker move to dismiss, arguing Plaintiff failed to sufficiently plead NIED. *CCBOE Mem*. 16–17; *Barker Mem.* 11. The Court agrees. Under West Virginia law, a defendant can be liable for NIED "after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable." Syl. Pt. 2, *Heldreth v. Marrs,* 425 S.E.2d 157, 158 (W. Va. 1992).

In the Complaint, Plaintiff merely references preceding paragraphs, states that the defendants engaged in negligent conduct, and claims that "Plaintiff L.C. suffered serious emotional distress and mental anguish as a direct and proximate result of Defendants' conduct." *Compl*. ¶¶ 109–11. Defendants CCBOE and Barker first rely on the unsuccessful argument that the negligence claim fails. *CCBOE Mem*. 16–17; *Barker Mem.* 11. Regardless, the only potentially relevant fact to the claim for NIED includes L.C.'s review of a video of the classroom incident involving E.C. days after the alleged conduct occurred. *Compl*. ¶¶ 24–27. The Supreme Court of Appeals of West Virginia specifically addressed the requirement "that a plaintiff in a negligent infliction of emotional distress action is present at the scene of the injury-producing event at the time it occurs and is aware that it is causing injury to the victim." *Heldreth*, 425 S.E.2d at 164. Plaintiff fails to address the elements of an NIED claim and does not plead that L.C. was at the scene of the injury-producing event when it occurred with awareness that it was causing injury to E.C. *Pl.'s CCBOE Resp*. 15; *Pl.'s Barker Resp.* 11.

Thus, Plaintiff failed to plead the required elements of the NIED claim. Defendants' motions to dismiss Count VIII are **GRANTED**.

### 7. Loss of Filial Consortium

Count IX asserts a claim of loss of filial consortium. *Compl*. ¶¶ 112-15. Defendants CCBOE and Barker argue Plaintiff's Count IX should be dismissed, as West Virginia has not specifically recognized this type of claim. *CCBOE Mem*. 17; *Barker Mem*. 12.

Defendant Barker asks the Court to alter course from this Court's previous decisions where the same argument was found to be premature at a motion to dismiss stage. *Barker Reply* 8-9 (citing *O. W.*, 2024 WL 3445489, at *7 (citing *Losh v. Teton Transp., Inc.*, No. 3:09–1495, 2010 WL 5343216, at *2–3 (S.D. W. Va. Dec. 21, 2010)). The Court will not address the issue at this stage and **DENIES** the motions to dismiss Count IX.[9]

### 8. 42 U.S.C. § 1983

Count X pleads a *Monell* claim against CCBOE. *Compl*. ¶¶ 112-25. Defendant CCBOE argues the claim should be dismissed because Plaintiff "set forth nothing more than a 'formulaic recitation of the elements.'" *CCBOE Mem*. 14 (quoting *Twombly*, 550 U.S. at 555). Additionally, Defendant CCBOE contends that Plaintiff failed to identify which constitutional right was allegedly violated. *Id.* at 18. The Court disagrees.

Political subdivisions are amenable to suit for constitutional violations under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). However, the fact that political subdivisions may be subject to liability for *Monell* claims does not render them vicariously liable for the actions of their employees. *Id.* at 691 ("In particular, we conclude that a municipality cannot

---

[9] The Court, again, reserves judgment as to whether the TCA provides immunity. *See O. W.*, 2024 WL 3445489, at *7 n.6.

be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). This is an easy burden at this stage. *See Owens v. Baltimore Att'y's Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (explaining "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high"). The Fourth Circuit Court of Appeals has specified that:

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citations omitted). Plaintiff adequately pleads a *Monell* claim. Plaintiff asserts that Defendant CCBOE "violated E.C.'s constitutional rights, as guaranteed under the Fourteenth Amendment to the United States Constitution." *Compl.* ¶ 117. Plaintiff alleges that E.C. and other students were discriminated against because of their disabilities. *Compl.* ¶ 121. Plaintiff also alleges CCBOE failed to adequately hire, retrain, train and/or supervise teachers, employees and aides, regularly hiring individuals lacking requisite training. *Id.* ¶¶ 119, 124. Additionally, Plaintiff alleges that there were multiple instances in recent years where CCBOE's employees behaved inappropriately towards students, particularly referencing four federal lawsuits. *Id.* ¶¶ 34, 120, 125. The Court disagrees with Defendant's argument, only addressed in its reply, that four federal lawsuits within a large school district are insufficient to allege a persistent or widespread practice. *CCBOE Reply* 10.

As this Court has found before, allegations of this nature are sufficient to plead a *Monell*

claim premised on disability discrimination. *See O. W.*, 2024 WL 3445489, at \*8 (collecting cases).

Accordingly, Defendant CCBOE's Motion to Dismiss Count X is **DENIED**.[10]

### 9. Official Capacity Claims

Defendant Barker argues that any claims alleged against both her, in her official capacity, and against Defendant CCBOE are improperly duplicitous and should be dismissed. *Barker Mem*. 12 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Plaintiff counters that *Graham* is inapplicable because it solely addresses a § 1983 claim, and Plaintiff has only asserted a § 1983 claim against Defendant CCBOE, not Defendant Barker. *Pl.'s Barker Resp*. 11–12. This Court has dismissed duplicative § 1983 claims and claims of alternative theories of liability based on the *Graham* decision and the Fourth Circuit's decision in *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). *See O. W.*, 2024 WL 3445489, at \*9 ("Because official-capacity suits are essentially claims against the [entity], official-capacity claims should be dismissed as duplicative when the entity is also named as a defendant." (internal quotation marks and citations omitted)). The redundancy of a § 1983 claim asserted against an officer in their official-capacity and the relevant entity is similarly shown in the present claims asserted against both Defendant Barker in her official capacity and Defendant CCBOE.

Defendant Barker's Partial Motion to Dismiss official capacity claims in counts asserted against both her and Defendant CCBOE is **GRANTED**.

### 10. Punitive Damages

Defendant CCBOE argues Plaintiff's requested punitive damages are prohibited by West

---

[10] Defendant CCBOE is not immune from this § 1983 claim. *See* W. Va. Code § 29-12A-18(e) ("This article does not apply to, and shall not be construed to apply to, the following: . . . "[c]ivil claims based upon alleged violations of the Constitution or statutes of the United States").

Virginia law. *CCBOE Mem.* 18. West Virginia law prohibits awards of punitive damages against political subdivisions. *See* W. Va. Code § 29-12A-7. However, Defendant CCBOE fails to acknowledge, and this Court has previously addressed that, the § 29-12A-7 bar on punitive damages is not applicable to claims "based upon alleged violations of the Constitution or statutes of the United States." *See, e.g., O. W.*, 2024 WL 3445489, at *9 (citing W. Va. Code § 29-12A-18(e) (The prohibition of punitive damages does not apply to "[c]ivil claims based upon alleged violations of the Constitution or statutes of the United States except that the provisions of section eleven of this article shall apply to such claims or related civil actions."[11])).

Plaintiff responds that the Complaint alleges violations of the United States Constitution, and statutes of the United States, *Pl.'s CCBOE Resp.* 17, including Count IV (ADA) and Count X (§ 1983).[12] Defendant CCBOE did not respond to Plaintiff's argument on punitive damages. Thus, the Court finds that Plaintiff has alleged violations of the United States Constitution and statutes to which punitive damages are not barred by namely, § 29-12A-7. However, the Court does not make a determination as to whether alternative authority precludes punitive damage in these circumstances. Accordingly, Plaintiff's claim for punitive damages may stand and Defendant CCBOE's Motion to Dismiss punitive damages is **DENIED**.

In summary, the Court **GRANTS in part** and **DENIES in part** the motions to dismiss. The Court proceeds by addressing Plaintiff's Motion to Strike.

$$* \qquad * \qquad *$$

---

[11] West Virginia Code § 29-12A-11 generally addresses that a political subdivision shall defend employees in civil actions where an alleged injury was caused by an employee's conduct while acting within the scope of employment.

[12] Plaintiff incorrectly states that Defendant CCBOE also argues that punitive damages are prohibited against individual defendants. *Pl.'s CCBOE Resp.* 17. Regardless, Plaintiff accurately indicates that immunity provided within § 29-12A-7 does not extend to individual defendants based on the statutory language itself. *Id.*

**B.  Plaintiff's Motion to Strike**

Plaintiff moves the Court to strike portions of Defendant Barker's Answer and portions of both Defendant CCBOE and Defendant Barker's motions. *Pl.'s Mot. to Strike* 4. Defendants CCBOE and Barker filed a joint response in opposition. *See Defs.' Resp. to Mot. to Strike*, ECF No. 24. Plaintiff did not reply.

Defendant CCBOE's Motion to Dismiss was filed in late January of 2026. *CCBOE Mot.*, ECF No. 13. Defendant Barker filed her Partial Motion to Dismiss in early February of 2026, along with her Answer to Plaintiff's Complaint. *Barker Mot.*, ECF No. 18; *Barker Answer*, ECF No. 20. Plaintiff appropriately filed her Motion to Strike within twenty-one days of such filings. *See* Fed. R. Civ. P. 12(f).

Plaintiff challenges the sufficiency of asserted defenses pursuant to Federal Rules of Civil Procedure 12(f), 8(c), 9, and 12(b), arguing the defenses are improper or fail to satisfy notice requirements and result in prejudice. *Pl.'s Mot. to Strike* 4.

Federal Rule of Civil Procedure 12(f) provides, in part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are considered a drastic remedy and generally disfavored, as they are often brought as a dilatory tactic. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (*quoting* 5A Charles Alan Wright et al., Federal Practice & Procedure § 1380, 647 (2d ed. 1990)). As a court reviews such motions in the light most favorable to the pleader, the movant must satisfy a high burden of establishing that "there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-cv-00894, 2021 WL 1868313, at *2 (S.D. W. Va. May 20, 2021) (*citing Clark v. Milam*, 152 F.R.D. 66, 70

(S.D. W. Va. 1993) (citations omitted)). The movant must "clearly show" that inclusion of the challenged portion or portions of the pleading will result in prejudice. *Id.*

A "pleading" includes various types of complaints and answers and any court-ordered replies to an answer. *See* Fed. R. Civ. P. 7. In a party's response to a pleading they must, in part, "state in short and plain terms its defenses to each claim asserted against it[.]" Fed. R. Civ. P. 8(c). Certain defenses, including fraud, require a party to plead with particularity. Fed. R. Civ. P. 9. Other defenses are waived if not raised by motion prior to responsive pleading. See Fed. R. Civ. P. 12(b). "An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Clem v. Corbeau*, 98 F.App'x. 197, 203 (4th Cir. 2004) (unpublished) (citing 5 Charles Alan Wright et al., Federal Practice & Procedure § 1274, at 455–56 (2d ed. 1990)).

While Defendants argue Plaintiff's Motion to Strike is "merely a dilatory tactic," Plaintiff argues Defendants' broad statements reserving defenses "create prejudice to the plaintiff by forcing unnecessary litigation and discovery." *Defs.' Resp. to Mot. to Strike* 3; *Pl.'s Mot. to Strike* 4.

## 1. Defenses within Defendants' Motions

Plaintiff requests that the Court strike the identical language from both motions to dismiss where each defendant "specifically raises and reserves any and all other grounds for dismissal including, but not limited to, grounds provided under the Federal Rules of Civil Procedure, federal law, and West Virginia law, and hereby do not waive any other additional, affirmative defenses." *CCBOE Mot.* 1; *Barker Mot.* 1.

First, Defendants state that a motion to strike pursuant to Rule 12(f) only applies to pleadings and that Defendants' motions to dismiss are motions, not pleadings. *Defs.' Resp. to Mot.*

*to Strike* 4 (*citing* Fed. R. Civ. P. 7; Fed. R. Civ. P. 12(f)). Further, Defendants argue that Plaintiff's cited case is distinguishable, as it addresses a motion to strike an affirmative defense raised in a responsive pleading, not a motion to dismiss. *Id.* at 4 n.1. Finally, as it concerns Defendant CCBOE, Defendants state that Defendant CCBOE has yet to file an answer in accordance with the delay of responsive pleadings provided within Rule 12(a)(4)(A). *Id.* at 4. Accordingly, Defendants argue that the duty to state affirmative defenses within Rule 8(c) has not yet attached to Defendant CCBOE and that the request to strike inappropriately addresses defenses that have not been formally asserted by Defendant CCBOE. *Id.* at 5.

The Court agrees. A motion to dismiss is not a "pleading" within Rule 7(a) that a party can move to strike pursuant to Rule 12(f). Regardless, Defendant CCBOE acknowledges the defenses have not yet been asserted and that "[t]he only potential defenses that could be deemed waived at this stage are Lack of Personal Jurisdiction (12(b)(2)); Improper Venue 12(b)(3)); Insufficient Process (12)(b)(4)); and/or Insufficient Service of Process (12(b)(5))." *Defs.' Resp. to Mot. to Strike* 5 n.4. Additionally, Plaintiff's Motion to Strike is moot as it concerns assertions within Defendant Barker's Partial Motion to Dismiss because her Answer, raising affirmative defenses, has since been filed which the Court will address below.

Thus, the Court **DENIES** Plaintiff's Motion to Strike as it concerns defenses within Defendants' motions. The Court next evaluates defenses within Defendant Barker's Answer.

### 2. Defenses within Defendant Barker's Answer

Plaintiff requests that the Court strike the following affirmative defenses from Defendant Barker's Answer:

> **Ninth Affirmative Defense**. Defendant Barker affirmatively asserts the defense of Act of God, natural cause pre-existing medical conditions, superseding and intervening causes, assumption of the risk, estoppel, waiver, accord and satisfaction, release, failure to mitigate, fraud, theft, sudden emergency, and any

other matter constituting an affirmative defense which may be applicable after discovery is completed.

**Twelfth Affirmative Defense**. Defendant Barker preserves her defenses under Rule 12(b) of the Federal Rules of Civil Procedure, more particularly the defenses of insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief may be granted, improper venue, lack of jurisdiction over the person, lack of jurisdiction over the subject matter, and failure to join a party under Rule 19.

**Sixteenth Affirmative Defense**. Defendant Barker asserts any and all defenses available to her under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the West Virginia Constitution, the United States Constitution, federal law, and any and all other administrative rules, law, or regulations that may be applicable under the facts of this case.

*Barker Answer* 17–19. Plaintiff relies on Judge Copenhaver's decision in *Courtland,* where portions of a defendant's answer were stricken, in part, because they were reservations of the right to raise future defenses which was unnecessary because of amendments permitted by Rule 15 of the Federal Rules of Civil Procedure. *Courtland*, 2021 WL 1868313, at *2. Plaintiff states that the movant's burden in a motion to strike is satisfied when a defendant seeks to reserve defenses which are not yet applicable because failure to satisfy notice requirements results in unnecessary litigation and discovery. *Pl.'s Mot. to Strike* 4. Defendants distinguish the problematic defenses addressed in *Courtland* from those within Defendant Barker's Answer by arguing that, in *Courtland*, "reserved" affirmative defenses were stricken, but here, Defendant Barker "asserts" affirmative defenses. *Defs.' Resp. to Mot. to Strike* 4.

In evaluating the latter portion of the Ninth Affirmative Defense, and Sixteenth Affirmative Defense, the general "assertion" of "any other matter constituting an affirmative defense which may be applicable after discovery is completed" and "any and all defenses" are certainly not satisfactory of the Rule 8 pleading requirement that defenses are pled providing fair notice to Plaintiff. Fed. R. Civ. P. 8(b). The distinction between the defenses at issue in the *Cortland* decision and those here is without a difference because the same reasoning applies: "[t]he use of a

-27-

blanket affirmative defense that fails to specify which defenses in Rule 8 are asserted presents a separate and independent basis for striking." *Courtland*, 2021 WL 1868313, at *4.

Accordingly, the Court will strike the latter, blanket language within Defendant Barker's Ninth Affirmative Defense and the entirety of her Sixteenth Affirmative Defense. Plaintiff failed to make substantive arguments addressing the defenses raised within the Ninth Affirmative Defense and apparently targets Defendant Barker's preservation of future unknown defenses that were not noticed.[13] Thus, the Court does not address the sufficiency of the specified defenses within the Ninth Affirmative Defense section.

Defendants argue that Plaintiff misinterpreted the Twelfth Affirmative Defense, which intended to signal intent to amend should the identification of the unnamed defendants produce new grounds for any non-waivable defenses. *Defs.' Resp. to Mot. to Strike* 7. Then, Defendants state that striking the raised defense is futile, as the rights to amend are governed by the Federal Rules, not a sentence reserving rights within an answer. *Id.* Additionally, Defendants acknowledge there are four waivable defenses contained within Rule 12(b). *Id.* at 7 n.7. These accurate concessions moot Plaintiff's motion to strike the Twelfth Affirmative Defense, which is clearly insufficient, however, need not be stricken as there is no resulting prejudice to Plaintiff.

Federal Rules of Civil Procedure permit defendants to seek leave to amend their answer and the Court will "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2)(b); Fed. R. Civ. P. 16(b)(4).

The Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Strike certain defenses raised within Defendant Barker's Answer. Specifically, Defendant Barker's Sixteenth Affirmative Defense will be stricken, as will the blanket language asserting "any other matter

---

[13] Plaintiff also did not file a reply.

constituting an affirmative defense which may be applicable after discovery is completed" within Defendant Barker's Ninth Affirmative Defense.

### IV. CONCLUSION

Defendants' Motions to Dismiss, ECF Nos. 13 and 18, are **GRANTED in part** and **DENIED in part.**

The Court **DISMISSES** Count I to the extent it pleads a negligence per se claim; Count II to the extent that it pleads negligent hiring and negligent retention claims; Count III; Count VII against Defendant CCBOE; Count VII against Defendant Barker only to the extent it relies on the conduct underlying the assault and battery claims; and Count VIII. Defendant Barker's Partial Motion to Dismiss is granted to the extent that it requests dismissal of the official capacity claims that are also asserted against Defendant CCBOE. Accordingly, the Court **DISMISSES** any official capacity claims against Defendant Barker within Counts I (Negligence), Count IV (ADA), and Count IX (Loss of Filial Consortium).

Plaintiff's Motion to Strike Insufficiently Pled Defenses is **GRANTED in part** and **DENIED in part**. ECF No. 21. Accordingly, the Court **STRIKES** the following language from Defendant Barker's Ninth Affirmative Defense: "any other matter constituting an affirmative defense which may be applicable after discovery is completed." The Court also **STRIKES** Defendant Barker's Sixteenth Affirmative Defense.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:       July 10, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-29-